Anne M. HART, individually, etc., et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. PCA 86–04370 WEA.

United States District Court, N.D. Florida.

Jan. 12, 1988.

## MEMORANDUM DECISION

ARNOW, Senior District Judge.

In this case plaintiffs have brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., for intentional infliction of mental distress caused by the misidentification of remains as Lt. Col. Thomas Hart, persistence in that identification, and continued carrying of Lt. Col. Hart's name as "accounted for" even after the Graves Registration Board rescinded the identification. Before the court is plaintiffs' motion for partial summary judgment on the issue of liability, defendant's cross motion for summary judgment, and plaintiffs' motion to strike defendant's cross motion for summary judgment. The case is one of first impression presenting a unique factual situation and a unique application of the Federal Tort Claims Act to those facts. A recitation of the facts will be helpful to a full understanding of this court's ruling.[1]

On December 21, 1972, during the Vietnam conflict, an American Air Force AC 130 was shot down by enemy fire in Laos. Sixteen American military personnel were aboard. Within two hours two survivors who had parachuted safely from the plane before it crashed were rescued. Early the following morning enemy soldiers went to the crash site. A captive enemy later reported that dismembered remains of five or six individuals were scattered about the crash site and that he never heard any reports of survivors.[2] Later that day an American team searched the crash site. No other survivors were found but part of an arm and hand were recovered. Fingerprint analysis later identified these body parts as being of Captain Birch, whose status was changed to killed in action. Thirteen other crew members were listed as missing in action, including Lt. Col. Thomas Trammell Hart, III.

Robert L. Crongeyer, Beggs & Lane, Fran L. Frick, Pensacola, Fla., for plaintiffs.

Michael P. Finney, Asst. U.S. Atty., Pensacola, Fla., Joan M. Bernott, Sp. Litigation Counsel, U.S. Dept. of Justice, Lt. Col. William C. Kirk, Major James N. Hatten, Office of the Judge Advocate General, Dept. of the Army, Major James M. Kinsella, USAF, General Litigation Div., Office of the Judge Advocate General, Washington, D.C., for defendant.

1. In an earlier ruling the court struck the untimely responses to plaintiffs' request for admissions, so that every item of that request is deemed admitted pursuant to F.R.Civ.P. 36(a), and, therefore, conclusively established pursuant to F.R.Civ.P. 36(b).

2. Those remains found were reportedly buried. (Defendant's Ex. D). There were also reports that some bloody bandages and 5 open parachutes were found at the site.

In 1973 an American reconnaissance aircraft flying over Northern Laos photographed a large area of grass in the configuration of "1973TH" or "1573TH". The military intelligence analysis of this photo contained specific reference to Lt. Col. Hart, then Captain Hart.[3]

In 1978, a status review board convened and recommended the status of Lt. Col. Hart be changed from MIA to KIA.[4]

In September, 1982, members of the National League of Families visited the crash site. Mrs. Hart, a plaintiff here, was a member of that group. This group discovered two bone fragments which were turned over to the government and sent to the United States Army Central Identification Laboratory, Hawaiian Islands (CIL).[5]

In December, 1983, eight additional bone fragments were found by an advance team from the CIL. In February, 1985, a CIL team excavated the site and recovered approximately 50,000 bone and dental fragments along with personal effects and ID tags, all of which were transported to the Hawaii lab. (Complaint, paragraph 10, Answer, paragraph 10) Analysis of these was undertaken at the CIL and the CIL recommended identification of 13 individuals from these fragments.[6]

Among those identified was Lt. Col. Hart. The CIL reported these findings to the Armed Services Graves Registration Board (ASGRO). The ASGRO accepted the identifications and the families were notified.

Mrs. Hart requested, and was refused, an independent forensic anthropologic examination of all 13 sets of remains. Thereafter she brought suit in the Central District of California for an injunction, but before hearing the Air Force allowed the independent examination of the remains identified as Lt. Col. Hart. Dr. Michael Charney, PhD, conducted the examination and concluded that the 7 small bone fragments which had been identified by CIL as those of Lt. Col. Hart could not have been so identified.[7] The defendant admits that the remains identified as those of Lt. Col. Hart lacked the criteria necessary for identification pursuant to any recognized scientific procedure, and that the identification was based upon examination of the 7 bone fragments and the exclusion of other casualties involved in this crash. (Plaintiffs' Request for Admissions paragraphs 5 and 7)

Although Mrs. Hart's request for a permanent injunction was denied, the government asserted that, if the next of kin did not want to bury the remains, because of an independent examination throwing doubt upon the identification, the Air Force would accept return of the remains and they would just remain unclaimed remains

3. Plaintiffs' Request for Admissions, paragraph 1. In affidavit, Brigadier General James W. Shufelt stated that this photo was taken 5 months after the crash and 300 miles North of the crash site, and that it is more plausibly associated with an aircraft crash which occurred within 5 miles of the characters and 13 days before the photographs were taken. But he neither disputes nor mentions an intelligence analysis, which is admitted, linking this photo with Lt. Col. Hart. (Defendant's Ex. F).

4. At this time the Review Board and Mrs. Hart were ignorant of the photograph and analysis referred to in footnote 3.

5. These 2 fragments were later identified by CIL as belonging to Lt. Col. Hart along with 5 other fragments out of 50,000 found during a 1985 excavation of the crash site. (Complaint, paragraph 12, Answer, paragraph 12).

6. No fragments were identified as belonging to Captain Birch although his ID tag was found. (Complaint, paragraph 13, Answer, paragraph 13). The majority of the fragments found, being determined to be too small or too unexceptional to be helpful to the identification team were not used in the identification. (Declaration of Tadao Furue (document 58) at pg. 5). Identifications of all 13 of the unaccounted for crew members were reported made. (Complaint, paragraph 15, Answer, paragraph 15).

7. "It is impossible to determine whether these fragments are from LTC HART or any other individual, whether they are from one individual or several, or whether they are even from any of the crew members of the AC-130A aircraft in question." (Declaration of Michael Charney, PhD, in *Hart v. Orr*, Civil No. C-85-4324 WHO, filed July 11, 1985). No dental identification was possible in the identification of Lt. Col. Hart, nor were ID tags or personal effects found which were associated with him. (Defendant's Ex. H, Attachment B at form DD 890 and form DD 891).

kept in a mortuary. *Hart v. Orr*, No. C–85–4324 WHO (N.D.Cal.1985) (Transcript of Proceedings on July 18, 1985).[8]

In October of 1985, two events occurred. Ellis R. Kerley, PhD, was asked by the Army to conduct an evaluation of the procedures used at the CIL in identifying remains and the Air Force wrote Mrs. Hart, apparently without any regard for contrary assurances made to her in July, requiring that she arrange for disposal of the remains identified as her husband and advising that if she did not the Air Force would arrange burial of such remains as being those of her husband at Arlington National Cemetery.

In December of 1985 the inspection of the CIL was conducted. The inspection team was unable to make or confirm eleven of the thirteen proposed identifications with any scientific certainty. Dr. William Maples of the inspection team characterized CIL's failure to exercise proper standards of identification as "blatant". (Plaintiffs' Request for Admissions, paragraph 14). The CIL had "apportioned co-mingled masses of unidentified remains into the known number of individuals involved in a common accident for release to the next of kin as individually identified remains." [9]

As a result of this investigation the Graves Registration Board rescinded the identification of Lt. Col. Hart, yet the departments of the Army and Air Force refused to place his name again on the unaccounted for list.[10]

Liability under the Federal Tort Claims Act is determined in accordance with state law. 28 U.S.C. § 1346(b) Florida law is applicable here. Under Florida law for the plaintiff to prevail in this action the following four elements must be established: 1) deliberate or reckless infliction of mental suffering; 2) outrageous conduct; 3) the conduct must have caused the distress; and 4) the distress must be severe. *Metropolitan Life Insurance Co. v. McCarson*, 467 So.2d 277 (Fla.1985).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. F.R.Civ.P. 56(c).

In the instant case, by affidavits of Dr. Jack Moser and Mrs. Hart, the mental distress of Mrs. Hart, its seriousness, and its cause, are proved. The government has presented no evidence to controvert the establishment of these elements, but has confined its opposition to plaintiffs' motion to the single issue of outrageousness.[11]

---

**8.** "Yes, the plaintiff's attorney has requested what would happen—suppose it was sent to a laboratory somewhere; they disagreed with it, and the next of kin did not want to bury because they did not believe, for some reason, that it was the remains—the Government—the Air Force—is willing to consider that assuming that we can protect the integrity of the remains—that they would then accept a return of the remains from the next of kin; and the next of kin, essentially, just rejecting the remains—those remains. Then they would just be kept, I believe, probably, unclaimed remains, and just maintained in a—mortuary storage—or something ...—as unclaimed." (Plaintiffs' Request for Admissions, paragraph # 10).

**9.** Plaintiffs' Request for Admissions, paragraph 13. This, in violation of Air Force Regulation 143–1(c)(3) dated December 28, 1983. (Defendant's Ex. V at pg. 9).

**10.** The policy of the government is that, when identifications are rescinded and information exists which indicates that one or more individuals survived or may have survived, those individuals will be listed as unaccounted for but unidentified individuals will continue to be listed as accounted for, when the recovery efforts were thorough and complete. (Defendant's Ex. T). The thoroughness of the recovery effort here is not established. In fact, evidence exists which tends to prove the lack of thoroughness. A member of the Pathet Lao, who later surrendered, stated that he went to the crash site shortly after the crash and found 5 parachutes, two small piles of bloody bandages, and the remains of five or six people which were then buried in a common grave at the site. (Legal Review of Status Review Hearing attached to Defendant's Ex. D). During the excavation no evidence of any grave was found. (Defendant's Ex. G).

**11.** Indeed, defendant's cross motion for summary judgment is premised solely upon its assertion that defendant's actions were not outrageous.

Adopting the Restatement (Second) of Torts § 46 (1965), the Florida Supreme Court held that:

Liability has been found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

467 So.2d at 279. (Citation omitted)

The question of whether or not the complained of behavior rises to the level of outrageousness necessary to constitute the tort is a matter of law, not fact. *Ponton v. Scarfone*, 468 So.2d 1009, 1011 (Fla. 2d DCA 1985). The test is whether the behavior is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency ... atrocious, and utterly intolerable in a civilized community. *Id.* (quoting *Metropolitan Life Insurance Company v. McCarson*, 467 So.2d 277 (Fla. 1985)).

Regarding summary judgment, the Supreme Court has directed:

The judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the [defendant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendant]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party conducting it, upon which the *onus* of proof is imposed."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (citation omitted).

The sentiment expressed by the Florida Supreme Court in *Kirksey v. Jernigan*, 45 So.2d 188 (1950), although the case is clearly distinguishable on its facts, is instructive. The court stated "the right to recover ... is especially appropriate to [torts] ... involving dead human bodies, where mental anguish to the surviving relatives is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it. *Id* at 189.

The government asserts that its actions in identifying the remains initially was reasonable, but no evidence of this reasonableness exists. In fact, in light of subsequent findings it was and is outrageous. The government then asserts that the adoption of that identification by the Graves Registration Board was reasonable. Under the evidence submitted it was reasonable. The GRB relied upon the CIL identification at that time and there is no evidence to indicate such reliance at that time was unreasonable. Next, the government asserts that the October, 1985, letter to Mrs. Hart containing the ultimatum that either she accept the remains and bury them or the government would do so was reasonable because the Secretary of the Air Force concluded there was a reasonable basis upon which to believe the identification was accurate. (Declaration of Vern Orr, Defendant's Ex. D). Nowhere does Secretary Orr address the reasonableness of this action in light of the government's assurance of contrary action at the July, 1985, district court proceedings. Further, the government addresses the asserted outrageousness of maintaining Lt. Col. Hart on the accounted for list with the affidavit of Brigadier General James Shufelt of the Defense Intelligence Agency, who concludes there is no evidence to support the assertion that anyone other than the two survivors who were picked up at the scene survived. (Defendant's Ex. F) The affidavit ignored the information about a common grave, which was not found, the two piles of bloody bandages, and 5 parachutes, and dismissed assertions that the photographs

of "1573TH" or "1973TH" were connected with Lt. Col. Hart without addressing why such a connection was ever made.

This court concludes that, although, respecting some of the disparate acts of the government in this case a reasonable jury might find a particular act was not outrageous, taken as a whole outrageousness is proved; an average member of society, upon recitation of these facts would exclaim, "outrageous." Outrageousness is proved herein as a matter of law. There being no disputed issue of material fact, the plaintiff Anne M. Hart, individually, is entitled to summary judgment on the issue of liability as a matter of law.

Insofar as the remainder of the plaintiffs are concerned, the record before this court is insufficient to establish for purposes of summary judgment the liability of the government to them. Insofar as the government's cross motion is concerned, it is insufficient to establish there was no liability on the part of the government to them.

An order in accordance with this memorandum decision will be entered.